Our fourth and final case is 23-1119 and 1122-1154, Sines v. Hill. Mr. Jones. Brian Jones Good morning. May it please the court, my name is Brian Jones. I represent appellant on the issue of joint and several liability. I'd like to start responding to appellee's argument that this issue has been waived or forfeited. Nearly all if not all of the defendants... What's the issue that you're addressing? Our issue is that we allege that the district court erred in finding that defendants were joint and severally liable for the compensatory damages in claims four and five. The defendants were found liable on counts three, which was the Virginia State civil conspiracy claim. Well, let me just ask some very fundamental questions to understand your issue. When you're found guilty of a conspiracy, you're jointly and severally liable for the damages, right? Resulting from the conspiracy. That's right. All right. And the damages resulting from the conspiracy in this case were the compensatory damages awarded in four and five. Your Honor, our argument is that... Was that right? No, Your Honor. Those damages did not result from the operation of the conspiracy? The jury did not make that finding, Your Honor. Just a minute. The jury found on the conspiracy count that all of them were co-conspirators, right? And liable. On the conspiracy count, the jury was instructed that there were six underlying torts or unlawful acts that could be the basis of the Virginia civil conspiracy claim. It was a list of six. One of those was false imprisonment. That is not one of the other counts in the case, but the jury made no finding on which of the specific six underlying torts actually was the underlying tort for the conspiracy. In order for the defendants who were found to be part of the conspiracy on count three, in order for them to be liable for four and five, the jury would have had to make a finding that four and five were the underlying torts for that conspiracy. What was proved in the conspiracy count? In other words, the object of the conspiracy, your argument is the object of the conspiracy did not include the conduct in counts four and five? I think that's clear from the jury's verdict, Your Honor. The main count in the case was count one, which was a count of a conspiracy to commit racially motivated violence. The jury was unable to reach a verdict on that count. And the count four is the Virginia hate crime statute. So if the jury wanted to find a conspiracy to commit some kind of racially motivated violence, they would have been able to reach a verdict on count one. So okay, so your issue is not challenging joint and several liability, but challenging whether the conduct in counts four and five were included in the conspiracy count. That's right, Your Honor. Okay, I understand. Was the district court given an opportunity to address that issue? Your Honor, all defendants, most if not all of the defendants filed post-trial motions arguing that the compensatory damages in count three were separate and distinct from the compensatory damages in four and five. For example, on the arguments relating to the punitive damages, defendants argued that when determining whether the punitive damages were disproportionately large to the compensatory damages, the defendants argued that the $1 compensatory damages amount in count three was the appropriate number to use, not the $1.2 or $1.3 million numbers. That's a different argument from the one that you're making now. The only time that appellees raise the issue with the court, they cite in their brief two instances. I'm asking you. You're the one making the argument. Did you make this precise argument that you're making before us in the district court? Our position is that we preserved the issue when we argued that the damages were separate and distinct from counts three versus counts four and five. Plaintiffs or appellees in their brief cite this court's decision in Tire Engineering and Distribution, LLC versus Shang Ong, which is a 2012 case. In that case, the defendants were found liable for a Virginia state civil conspiracy. The jury was instructed that there were three potential underlying torts or unlawful acts. This court held that because the verdict form on the claim required the jury to find in to issue a special finding of which underlying torts the defendants conspired to commit, that would require dismissal of that conspiracy claim. Essentially, that is our argument here, is that because you have to assume that the underlying tort was one of the ones covered by counts four and five, and that the jury did not make that specific finding, that it was an error for the trial court to essentially substitute itself and make that finding. The court still doesn't have any other questions. Thank you, Mr. Jones. Mr. Mills? Thank you, Your Honor. May it please the court, David Mills, representing the appellees, the plaintiffs in this case. I will address the joint separate liability or the argument that we just heard. First I would like to say that on the waiver issue, I'm not going to repeat the arguments that we made in our brief in opposition, but I will address this argument that Mr. Jones makes here. They did not raise this issue, not properly in the lower court, and they didn't offer any explanation for that. In fact, we did raise this issue, the plaintiffs raised this issue in a motion seeking a joint and separate liability finding against all defendants, including all 17 of the answering defendants and the defaulting defendants, and the judge actually litigated that. We fought a motion for that finding. Not a single defendant opposed that motion, including any of the appellants here. So they had an opportunity to do so, did not do so. And the court is correct to point out that the only context in which they raised this issue about separate damages and distinct damages was in the context of arguing about whether compensatory damages should be aggregated for purposes of determining the ratio between punitive damage, the punitive damages ratio. So it was not, and there was no request for a finding of no joint and separate liability. So counsel has not argued any exceptional circumstances justify their failure to raise that issue. Let me ask you this, I've been somewhat confused by the issue of setting aside the waiver question, and maybe that's the appropriate manner to address it. But the conspiracy, I thought, encompassed all the overt acts that were alleged in four and five. They did, your honor. How do you establish that? The way that's clear is the jury instructions were very clear on that. Jury instructions, we'll start with jury instruction 13, which explains that co-conspirators are liable for all the reasonably foreseeable acts of their co-conspirators done in furtherance of the conspiracy. Jury instruction 23. Let's assume that's covered adequately. That's covered adequately. The question is, there's some specific damage findings on four and five. Why, then, isn't the whole conspiracy liable for that instead of for one dollar? They are, your honor. The jury instruction 23, which was the count three conspiracy instruction. The jury entered on the conspiracy count, they entered one dollar. That's correct. But the conspiracy, under Virginia law, conspiracy is the thread that ties the wrongful acts together. I know, but in a conspiracy, isn't each member of the conspiracy jointly and severally liable for the acts foreseeable? That is correct. And so, if all those plaintiffs were liable for all the acts of the conspiracy, including the acts of four and five. All the defendants were. That's correct, your honor. Yeah. Then, it seems to me, every member of the conspiracy should have been hit with. Well the jury instructions were very clear that the predicate acts in four and five were the objects of the conspiracy. All the defendants were. I understand that. That's what I had assumed. Right. That's absolutely correct. No, but then they have an inconsistent verdict because the jury gave the co-conspirators, I mean, were awarded only one dollar in the conspiracy count, and yet each conspirator should have been liable jointly and severally for all the damages foreseeable. Jury instruction 34. I'm talking about the verdict form. Right, the verdict form made it clear, the jury was instructed not to award duplicate damages. And so, they awarded damages, they found liability on the conspiracy, they found liability on four, they found liability on five. So your argument is that on one, they were trying to avoid duplicate damages, and so that the damages found in four and five identify the source of the damages, but all conspirators are jointly and severally liable for it. That's absolutely correct, your honor. And the jury instructions make that abundantly clear. Jury instruction 23 explained what the conspiracy was. It was a conspiracy to commit predicate, had certain goals, which included violating the Virginia hate crime statute and assault and battery, which were counts four and five. And then when you get to the instructions on count four and count five, the judge again instructed the jury that these were the objects of the conspiracy. So there can be no doubt that the jury found that the predicate acts of the conspiracy were committed by co-conspirators. That's the way it probably should have been. My only question was the verdict, it wouldn't have been duplicate to have them in four and five and also to have the same numbers, the aggregate number, what $2 million in count three. We would have been here arguing that the jury awarded duplicate damages in some confusing way, but clearly... And of course, it's not duplicate even if you award a joint several because you only get one satisfaction. So if the compensatory damages were $2 million, every single co-conspirator is liable for the full amount until it's satisfied. That's correct. But the jury verdict form, the verdict that the jury rendered on damages made perfect sense in this, as Judge Moon found below, because what the jury found was liability on count three, actually awarded punitive damages as well. I understand. Setting that aside, and they found the predicate acts, which is under Virginia law, that's where the damages are found. They're found in the predicate acts. So they found predicate act four, predicate act five, specific damages for each of those distinct acts. And then the conspiracy count finding all these conspirators liable together makes them jointly and severally liable for it. I want to say one word about one of the arguments that the appellants make on tire engineering. Tire engineering was a case, actually demonstrates what Your Honor is saying right now. In that case, the court found two out of the three predicate acts overturned them, but nevertheless found the conspiracy was proven because at least one predicate act was found. The problem the court was addressing was, gee, the damages is a general award, and we don't know whether the damages were associated with one of the predicate acts that we overturned. In this case, the jury found all the predicate acts that the plaintiffs had alleged, all the predicate acts that were in front of the jury, they found that the co-conspirators had committed them. And they awarded distinct damages for each one of those acts. So the issues in tire engineering weren't even present in our case. And so that case has no application here. In fact, I will point out that the court in tire engineering found a conspiracy and upheld the damages award anyway on other grounds, if you look at that case. The fundamental argument that the plaintiffs make on joint and several liability is a misreading of Wright versus Eli Lilly. What do you understand their argument to be? I think their argument is that what they've done is they've drawn some sort of horn book law language about joint and several liability in an indivisible injury situation, which is true. Like if you have two joint torfeasors that commit one indivisible injury, they're jointly and severally liable for that. That's a statement of law that's accurate. What they do is they extrapolate from that and say, well, the only time you can have joint and several liability is if you have a singular injury. That's not the law of conspiracy. No, no. Conspiracy covers everything that's foreseeable to the conspiracy. I mean, they can allege they robbed three banks and all three banks are chargeable to every conspiracy. Okay, I understand your position. My biggest confusion came from the verdict form. Right, I understand that. As Eveli pointed out, and the judge, of course, this court will uphold a jury verdict if there's any reasonable explanation for it. Of course, that's the most logical one and it's consistent with both the instructions the court gave and with Virginia law on that. That actually, the misunderstanding about joint and several liability only applying in a singular injury situation addresses all of their other assignments of error in this case because there's no Seventh Amendment problem, because the judge did not find damages, which is a jury function, which is what they're saying happened here because of the joint and several liability issue. They also complained that they were not named specifically as defendants in counts four and five, but as Ron has already pointed out and as the law of conspiracy makes it very, very clear, that's not required. That's not necessary as long as they are named as co-defendants, as co-conspirators and found to be part of the conspiracy, which they were. So unless the court has any further questions. Thank you, Mr. Mills. What about the punitive damages? Who's going to raise that? Okay, that's going to be argued separately by my colleague, Rachel. That's part of the program? That's part of the program, Your Honor. That's coming soon. Thank you, Your Honor. Mr. Jones, you've got some rebuttal on this issue before we get to Judge Niemeyer's favorite issue? Your Honor, Jury Instruction 23 states, plaintiffs need only prove that the defendants conspired to commit one of the underlying acts to impose liability. So to say that the jury found that they committed all of the underlying acts is simply inaccurate because there was no special verdict form that says that had the jury finding that they committed all of the underlying acts. No, but as I understand it, counts 4 and 5 are acts pursued as objects of the conspiracy. That's not accurate based on the actual jury instruction. The actual jury instruction for count 4, which is jury instruction number 24, says, as previously mentioned, plaintiffs allege that the defendants engaged in a civil conspiracy to violate Virginia Code Section 18.01-42.1. That's referencing the previous jury instruction. Plaintiffs for Merrill Willis also bring a stand-alone claim against defendants Cline Spencer, Kessler, Ray, and Cantwell under Virginia Code Section 8.01-42.1. This was a stand-alone claim. That's how the jury was instructed. So to say that the jury found that that stand-alone claim was part of the conspiracy is not accurate because there was no finding by the jury that that was the case. So that's our argument, is that the scope of the conspiracy is a factual issue for the jury and not for the court, and that's where the district court aired. We'd ask the court to reverse. Thank you. Thank you, Mr. Jones. Mr. Tolentino? Good morning, Your Honors, and may it please the court. Ray Tolentino on behalf of Plaintiffs Cross Appellants. I'll be discussing our cross appeal of the district court's order slashing the jury's $23 million punitive damages award down to $350,000 based on Virginia's statutory cap. The jury's punitive damages award was extraordinary, but it was no accident. It sent a clear and unmistakable message to defendants that the racist and hate-fueled violence that they unleashed on plaintiffs and the people of Charlottesville has no home in the Commonwealth or its courts. Let me ask you, obviously the jury was making a statement and made a big one, and do you challenge the fact that punitive damages as a general matter are capped at $350,000? We challenge that they are... We do not contest that they are capped at $350,000. The question here is that they are capped per action, and the central... I understand. That's what I thought the issue was. In other words, the court here capped them as to the entire action that apportioned them then among the plaintiffs, and your argument is that they should be capped with respect to each plaintiff. That's correct, Your Honor, and that approach flows from the statute's text, the context, and bedrock principles of Joinder, which confirm that at the time of the enactment of this particular statute in 1987, an action referred to a single plaintiff's action. At the time that the legislature enacted this particular statute, under Virginia law as a general matter, plaintiffs could not join each other in litigating a case. So when the legislature wrote the word action into the punitive damages statute, it couldn't have been referring to lawsuits with multiple plaintiffs, and it didn't anticipate that it would cover a multi-plaintiff type action, and we know that that's true also from the rest of the statutory text. If you look at the statutory text, it also includes the words against all defendants. Now, if action includes all plaintiffs and covers all plaintiffs, what work is against all defendants doing? It's not doing any work, and as Your Honors know, you're not supposed to render superfluous the rest of the statutory text. You're supposed to give it meaning. And there's a corollary principle to that, which is you can't add language into the statutory text. And what defendants' reading suggests is that they are adding a multi-plaintiff limitation. They are adding the words, this punitive damages cap applies across all plaintiffs against all defendants. Now, they omitted the across all plaintiffs language, and they included the against all defendants language. That is intentional, and we should sort of give meaning to that particular omission and inclusion. That's just statutory interpretation 101. Counsel, Judge Moon, as I recall in this case, raised the issue of certification at some point in this trial. And I think he was concerned about the novel issues that had come up with respect to punitive damages. But because of all the other issues that were part of the case, I think he decided against doing that. But here we are on this one narrow issue. It doesn't sound like you're going to be speaking very much about whether the statute was intended to cover this particular action writ large. I know you preserved that. I get that. But this particular issue is one that just isn't all that clear, frankly, to me. So why wouldn't we just certify this to the Virginia Supreme Court? Sure, Chief Judge Diaz. And there are two points there. I do want to say we are not conceding that point. I firmly believe in it. But to directly answer your question about certification, as your honors know, we address this in footnote six of our reply. And we articulate the standard in Roe v. Doe, this court's opinion from 1994. And it says certification is proper only if, quote, the available state law is clearly insufficient. Now, we don't think the state law is clearly insufficient here. In fact, we think it's very sufficient to reach the conclusion that we have articulated, which is the statutory text itself speaks to the issue. You can look at the statutory text. The original meaning of action, which defendants do not even address or contest, other principles of statutory interpretation, like the mischief rule and absurdity, this would cause individuals to have an incentive to bring seriatim claims instead of joinder, which would just wreak havoc in the state courts, in the Commonwealth, and constitutional avoidance. All of those tools of statutory construction point in the same direction here. And they point toward a perplaintive application of the punitive damages statute. Now, we think in light of all of those considerations, certification is unnecessary. If the court does certify, we think that the Virginia Supreme Court would agree with what our reading holds. But I would be remiss if I didn't know one thing, which is that the reality is that our clients have been waiting for six years for justice, right? And two years ago, the jury awarded them $23 million in punitive damages. One of our clients, April Munoz, is here with us in the courtroom, and I think it's important to recognize that justice delays justice denied, and that certification would just elongate the procedures here. I'll also note another thing, which is in all abode, this court also reached a question about the same punitive damages cap and said, look, the statutory text is clear. All of the relevant statutory construction tools all point in the same direction. I think this court can answer the question now. It can answer it in our favor and hold that if this punitive damages cap applies to hate crimes proceedings, it has to apply on a perplaintive basis. There was an amicus brief filed by professors at Washington and Lee Law School and Virginia Law School that actually explained what action meant under Virginia law. It seemed to me it was very erudite. It went from the beginning up to now, and I think supports the notion that when Virginia refers to an action, it refers to the common law action of one plaintiff against one or more defendants, and so that, I suppose, I guess they follow that in supporting your position on that. Is that it? Yeah. That's correct, Judge Niemeyer. Now UVA Law Dean Leslie Kendrick and other amici from the Washington and Lee Law School have all confirmed our understanding of what the original meaning of action is, which is a perplaintiff action, and if that is true, then the multi-plaintiff interpretation that the other side is suggesting would make no sense in 1987. It was impossible for there to be multi-plaintiffs in a single lawsuit, and as your honors know, when you are figuring out what the meaning of a word is, you have to look at the original meaning at the time of the enactment of the statute. Right? That's New Prime from the Supreme Court and Bostock from the Supreme Court. They all confirm that the relevant time period that you look for in terms of original meaning is the meaning at the time of enactment, and my friends on the other side do not dispute that at the time of the enactment in 1987, action meant perplaintiff, and if there were any other lingering doubt, your honors, you can look to how other jurisdictions have treated this. The State Courts of North Carolina and the State Courts of Georgia both have punitive damages capped, and they apply them on a perplaintiff basis for many of the reasons that we've explained, which is that it would be absurd to incentivize individuals to file seriatim claims when really what you want to do is have plaintiffs join in an action. It would be horribly inefficient for the State Courts of the Commonwealth and everywhere else if there were a rule that said if you join in an action with other plaintiffs, you lose the substantive right of $350,000, $350,000 punitive damages awarded. Just to be clear on something you said earlier, you are now conceding that $350,000 cap applies, albeit you say in a perplaintiff basis. I thought there was an argument that it did not apply to hate crimes. Yes, your honor, that is our other argument. I'm happy to turn to that because I will say we think it's... I thought I heard you just say the cap applies earlier. No, we said if the cap applies at all, it applies on a perplaintiff basis, but I do want to turn to that, Judge Wynne, because I think it's important to note we are not conceding our point that this cap does not apply to hate crimes proceeding, and we look to the statutory text, the purpose, and the history, which suggests that really what the cap was getting at was financial stability in the marketplace and insurance, and we know for a fact the General Assembly had no intention of applying this particular cap to particularly egregious circumstances like this, where individuals... The difficulty is you made a statutory argument on your first point, but if you make a statutory argument on your second, the cap is a perplaintiff cap on punitive damages. That's the statute, 1987, whenever it was. About a year later, they came in with a hate crime, and they said hate crime can include punitive damages. That's all it says, includes. So what's wrong? Where's an inconsistency? The fact that the hate crime conviction, I mean, success can include punitive damages doesn't conflict with the damage cap of a year earlier. It just says you can get them. Of course, they're capped by another statute. They don't say that. They just say punitive damages are available. To be clear, Judge Niemeyer, I think our second argument is also rooted in the text, right? And forgive my Latin. I'm really bad at this. But the principle of nocitur associates says words are known by the company they keep. And here, there's a very specific company that they keep, which is including medical malpractice actions. So our textual hook is if any action gets the punitive damages cap, it has to resemble a medical malpractice action. And we know that because the legislative history and all of the enactment history, which is the nature of it. It just said including it. And they probably had some policy reason or some decision in a medical malpractice case where punitive damages were eliminated. And perhaps that's because medical malpractice traditionally was contractual. When somebody, a doctor, performs, he's performing under a contract. And Virginia has the doctrine that you don't commit torts by breaching a contract. And so you would not award a punitive damages. But it seems to me, I don't know if that's the reason they included it. But to say because they included medical malpractice claims doesn't say anything about the cap. Well, respectfully, Your Honor, we disagree because statutory construction tools suggest that you do look to surrounding context to understand what type of action this is. I'm accepting your argument, but I'm saying it doesn't gain you much. I can't figure out why you think medical malpractice claims, this is a hate crime being defined. And it says in a hate crime, including medical malpractice claims, punitive damages are available. Well, the statute says in any action, including medical malpractice actions, and our position is that action needs to be defined in terms of the company that it keeps, which is it has to be an action that looks like a medical malpractice action, right? The hate crime statute is separate statutory provision, and we know that the General Assembly intended for there to be extreme deterrence because there was the blight of racism in the Commonwealth. And to fight that blight, it allowed for punitive damages, and it would undermine that policy if you were to apply the punitive damages cap. Don't you think they should have said, because that was enacted after the cap was enacted, don't you think they should have said punitive damages not subject to the cap, or punitive damages despite the cap? They didn't say that. It said punitive damages. We don't think they... Punitive damages for every action under the... was capped. Well, Your Honor, we don't think they needed to say it, right? The statutory text in the legislative history makes clear that there was a specific purpose they had in mind, which was stabilizing the economy. And again, I'll return to the point that stopping individuals who inflict hate crimes on other individuals has nothing to do with the economy. This was all within the context of tort reform. And again, Your Honor, we recognize this is the harder question. So we do want to emphasize that if the hate crimes proceedings are subject to the cap, at a minimum, they have to be... the punitive damages cap has to be applied on a per-plaintiff basis. If you're struggling with that particular issue, at a minimum, this Court should reverse on the district court's application of the cap on a per-plaintiff basis. Thank you, Counsel. Mr. Kolenik? Thank you, Your Honor. Jim Kolenik for Cross Eppley, Nathan D'Amico. I'll start where they left off. They don't have a substantive right to punitive damages. In Virginia, it is not the plaintiffs' due. And we have that cited in the district court pleadings. That's... I'm sorry, Your Honor. Z.V. Jenkins from 1953. So they don't have a right to punitive damages. Therefore, the state can cap it in whatever manner it sees fit or even delete them altogether. Secondly, the supplemental authority that we filed a couple days ago directly addresses their argument about multi-plaintiff cases. It specifically cites, this is a Virginia trial court case, that specifically cites to the district court case here for the proposition that the cap applies to multiple plaintiff cases. Further, every court that has examined this, and admittedly none of them have examined the specific multiple plaintiff argument that cross-appellants are making, has found the statute is plain, unambiguous, and therefore you don't get into the statutory construction arguments that they're making. You cannot under Virginia law because statutory construction, other than applying the plain meaning of the words, is barred in Virginia courts. It's strictly a creature of ambiguity. So you must first find an ambiguity in the statute. No court that's ever examined it has ever found an ambiguity. They always say, whether federal or state, they always say it's plain, unambiguous, and we're going to apply the plain meaning of the language. That language is in no event and against all defendants. Now, while again admitting that no court has ever dealt with the multiple plaintiff issue ex-professo or explicitly in its holding, a moment's thought would reveal that how do you keep $350,000 cap against all defendants if you give $350,000 to each plaintiff? How do you protect, again, it's not going to be limited to this case. The plaintiff's bar is going to make every argument they can come up with to find an exception for every case that comes up, as we stated in the brief. A college has a affirmative action program that people find acceptable. The difficulty with what you're saying for me is they say in any action. And at that time, Virginia understood an action as a single plaintiff against one or more defendants. And when they used multiple plaintiffs, they called them actions. And I was impressed, I must say, with the historical support for that and the pervasiveness in the Virginia law that the amicus brief supplied. I don't normally depend so much on that type of thing because we get a lot of amici briefs. But this addressed that specific question, how does Virginia treat the word action in its statutes? And it looked to me like the legislature always understood an action between a plaintiff and a defendant because you couldn't have joint plaintiffs unless you called it two actions. And deriving from that, then, the plaintiff would be capped at $350,000. And if you had two plaintiffs, you'd have two actions, I guess. You know, I just saw this, I think the last term of court, I saw indictments coming from Virginia. And instead of having one indictment with multiple counts, they had 14 indictments. It's part of the same thing. There can only be one plaintiff. It's a peculiarity, I think, historical peculiarity that's been retained. And so maybe you can address what your answer to that is. They did pass a statute to try to ameliorate the incentives of that because if you can only have one plaintiff and one action, then it incentivizes multiple actions where there are multiple plaintiffs involved. So they passed that multi-plaintiff action when there's six, I guess. You have to have at least six to get under that statute. Yes, sir, that's the multiple plaintiff. I'm forgetting the specific name of it. That statute, as worthy counsel mentioned, existed one way in 1987, but it's been amended twice since then, 1995 and 2023. And they don't make the changes that these guys would need to carry the day. They do allow for joinder now, which they did not in 1987. They had, as your Honor mentioned, and we're very glad you did, the hate crime statute came out after the 1987 enactment, and it has the language that the Court mentioned. And so the hate crime statute is subject to the cap. Multiple plaintiffs can be joined in the same action now as distinct from 1987. And importantly, they can be joined on the motion of any party under the current statute. My question, I suppose, is in the 1987 statute, it refers to a $350,000 cap in any action. And the argument that they make is that any action specifically means a single plaintiff and one or more dependents under Virginia law. Thank you, Your Honor. I think the supplemental authority we filed directly deals with that as well. You cannot claim stack in Virginia courts now. I don't know about 1987. They get one $350,000 cap no matter how many actions or claims they bring. Also, it's impossible to make the statutory language work in no event against all defendants if you hand out $350,000 to each plaintiff. So, again, in a mass tort… Why not? What's the problem? Well, this is what the Virginia courts have said, that this is plain meaning and it applies to everything and everybody, $350,000. No, I understand, but I don't understand why all defendants. The defendants are jointly and severally responsible for judgments in a conspiracy case. Yes, Your Honor, but they're jointly and severally responsible for what? Compensatory. In Virginia, their cap is to punitive is $350,000. As it happens in this case, the court made them all responsible for less. They divvied it up among the defendants as to who has to pay what on punitives, and it all came to $350,000. If the plaintiffs understood the statute to mean that clearly, as you argue, then this lawsuit would have been… How many plaintiffs are there in this claim? Several dozen, Your Honor. It would be a lot of lawsuits. All joined to one on motion of the defense. That's what the law allows in Virginia now. I'm talking about the federal court. This is a federal action. It's a federal action, but there's no federal prohibition on joinder, and since we're applying state law… I know. I understand. But the incentive would be if we applied the state law the way you say, they would have filed separate federal actions for each plaintiff. But we could have joined the pendent state claim. You could have, but they're trying to claim that in an action, and they have one plaintiff per action. The whole thing gets a little perverse. I guess the only possible argument to that is they did not do that. No, but it goes back to what that meant when the 87 statute was enacted. What did the legislature mean? I don't see how we can say that the legislature in all these years since… I can't find anything from that time and before where an action refers to multi-plaintiff action. In other words, every action that Virginia treated is one plaintiff. We would not take issue with that, Judge. Pardon me for me to argue with law professors, but… Sometimes they rise above reality. They're professorial. They did make very good points. It was an excellent brief, but we think that they misunderstood, if I can say that about their brief, the import of the current multi-plaintiff act in Virginia law. At the end of the day, though, it goes back to the cap. They don't have a substantive right based on Virginia law. It's not their right to collect these punitives. They're allowed to collect them on behalf of society. Their attorneys are allowed to get a fee for collecting them on behalf of society. But they capped it, and they even capped it as to the hate crime statute. So what did the Virginia legislature mean by a hate crime statute? Clearly, the underlying action here meets that definition. I mean, what else could they possibly have meant? The verbiage, causing damage, you know, as a result of it. That had to be what they meant. It's reasonable anyway, and they capped it. They specifically and explicitly linked it to the punitive damages cap. Every, again, whether state or federal, every court that's examined has found it unambiguous, applied the plain meaning, and capped the entire action. If you hand it out per plaintiff, you're giving more than $350,000 against all defendants in direct violation of the plain meaning of the statute. As to sending the case to the Virginia Supreme Court, Your Honors, we would not object to that, it seems to us. That's a more useful forum. This case has already dragged on for I don't know how many years. Might speed it up, odd as it sounds. Well, we're not entirely useless, but let's see if we do. Do you have anything else? No, Your Honor. Thank you. Mr. Tolentino? Thank you, Your Honors. Just a couple of points in rebuttal. The first is Judge Niemeyer, you're absolutely right. That action means what it meant in 1987, which is the action of a single plaintiff. The law professor's brief is very clear and persuasive on this. It's also further supported by the way that action is used in other statutes, which is the Med-Mal statute that we point to in our red brief, the hate crime statute. They all refer to action in the singular and tie it to a specific party or plaintiff in the singular. So other statutes also confirm that the way that Your Honor has sort of framed it is exactly the way to frame it. And we think that that also disposes of the 28J case that they identified because that case was just about multi-claims, not multi-plaintiff lawsuits. So it doesn't even answer the question that is presented to you. The question is, is an action an action of multi-plaintiffs or a single plaintiff? And you're absolutely right, Your Honor, that it refers to a single plaintiff. That leads to my next point, which is the other side points to what's called the MCLA, the Multi-Claims Litigation Act. But even that case, even that statute, pardon me, Your Honors, refers to the actions so joined, which means that it refers to separate actions of plaintiffs that have been joined. And that suggests, Your Honor, that the MCLA didn't change any understanding of what the word action meant. And, in fact, the other side has no answer to the fact that that applies only to six or more plaintiffs, which means what happens to two to five plaintiffs? They have separate actions. So the MCLA cannot provide or supply the explanation that the other side's reading requires. Assume we agree that this should be applied on a per-plaintiff basis. Want us to reverse or vacate? We would request that you reverse and remand to the district court for a per-plaintiff application of the punitive damages cap. That's the bottom line that we would request, Judge Winn. Because we think, as a matter of law, we are right that it applies on a per-plaintiff basis. The last point I just want to make is, Judge Niemeyer, you mentioned there would be a strong incentive for individuals not to join their actions. And my friend on the other side said, well, we would seek joinder. I think in a circumstance like that, you can imagine plaintiffs vigorously fighting joinder on the theory that it deprives them of their substantive rights if you were to join a case. And I think most courts would agree that if you were to force individuals to join. There's ways around it. I think you have to be a clever proceduralist, but you wouldn't seek joinder, you would seek consolidation. Right. And I think consolidation doesn't make the cases the same. Exactly. Whereas joinder does. I think that's right, Judge Niemeyer. But I didn't want to get into that. I think that might be right, Judge Niemeyer, but that's the kind of gamesmanship that we shouldn't encourage. I think there's an easier solution, which is to read it precisely how your honors have been mentioning it, which is on a per-plaintiff basis. And I think that's especially true in a case like this where each of our individual plaintiffs deserve the justice that they were deprived. The jury's verdict sent a pretty staggering message that we should be careful not to disturb unless there are exceptional circumstances. That's just a principle of law. We respect a jury's verdict unless the General Assembly has spoken clearly that we have to reduce it some way. It has not spoken clearly. And so the jury's verdict tells the world that you cannot plan a race war, you cannot storm a city and leave death and destruction in your wake with impunity. So for all those reasons and the reasons that we articulate in our brief, we would ask this court to reverse the district court's application of the punitive damages cap, and it should affirm in every other respect. Thank you, Your Honors. Thank you, Counsel. We'll come down and greet Counsel and adjourn for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, Paul V. Niemeyer, James Andrew Wynn